UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARTINE LOWE,

                              Plaintiff,

    - against -

MOUNT SINAI HEALTH SYSTEM, INC.,
NICHOLAS LOPIANO (A/K/A NICK
LOPIANO), and CAROL TORCHEN,

                              Defendants.

16 Civ. 06074 (AKH) (HBP)

# MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

AKERMAN LLP
Rory J. McEvoy
Brittany A. Buccellato
Attorneys for Defendants
666 Fifth Avenue
New York, New York
212.880.3800
rory.mcevoy@akerman.com
brittany.buccellato@akerman.com

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ....................................................................................... 1

FACTS ............................................................................................................................ 2

   A.   Lowe's Employment At Mount Sinai.................................................................. 2

   B.   Mount Sinai's Anti-Discrimination And Anti-Retaliation Policies ..................... 3

   C.   On September 30, 2012, Lowe Is Suspended And On January 16, 2013, She Is
       Terminated For Patient Registration Errors ...................................................... 3

   D.   On May 7, 2014, An Arbitrator Reinstates Lowe Without Back Pay And States
       That She Is On Notice That Future Mistakes Will Lead To Her Termination ................. 4

   E.   In June 2014, Lowe Returns To Work And Shadows Other Business Associates ............ 5

   F.   In October 2014, Lowe Complains That Lopiano Is Scrutinizing Her ............................ 5

   G.   On May 19, 2015, Lowe Is Terminated After An Audit Showed That She Was
       Responsible For 15 Admissions Slips Being Completed Incorrectly ................................ 6

APPLICABLE LEGAL STANDARD ............................................................................ 9

ARGUMENT................................................................................................................. 10

   POINT I    SUMMARY JUDGMENT SHOULD BE GRANTED TO DEFENDANTS
                BECAUSE LOWE CANNOT ESTABLISH A CLAIM FOR RACE OR
                NATIONAL ORIGIN DISCRIMINATION ................................................. 10

   A.   Lowe Was Terminated For Making 15 Registration Errors After She Had
       Been Reinstated By An Arbitrator With A Last Chance Warning That Any
       Future Errors Would Subject Her To Termination ........................................... 11

   B.   There Is No Evidence Of Race Or National Origin Discrimination ................... 14

    1.   The Only Alleged Comments About Lowe's National Origin Are, At Most,
        Stray Remarks ......................................................................................... 14

    2.   Lowe's Subjective Interpretation Of Lopiano's Facial Expressions And Torchen's
        Tone Fails To Provide Evidence Of Discrimination .................................... 16

    3.   There Is No Evidence That Lopiano Treated African-American Business
        Associate A's Worse Than White Business Associate A's Or That He Replaced
        African-American Business Associate A's With White Business Associate A's ......... 17

4.   Lopiano Was Entitled To Evaluate Lowe's Performance According To His Own Expectations..................................................................................................... 19

POINT II   SUMMARY JUDGMENT SHOULD BE GRANTED TO DEFENDANTS BECAUSE LOWE CANNOT ESTABLISH A CLAIM FOR HOSTILE WORK ENVIRONMENT ......................................................................... 19

A.   The Alleged Treatment Was Not Severe And Pervasive, And Amounted To No More Than Petty Slights And Trivial Inconveniences..................................... 20

B.   Lowe Cannot Show That Defendants Created A Hostile Work Environment for Her Because Of Her Race Or National Origin................................................. 22

POINT III   SUMMARY JUDGMENT SHOULD BE GRANTED TO DEFENDANTS BECAUSE LOWE CANNOT ESTABLISH A CLAIM FOR RETALIATION ................................................................................. 23

A.   There Is No Evidence That Plaintiff Ever Complained About Discrimination ............... 24

B.   There Is No Causal Connection Between Plaintiff's Alleged Complaints And Plaintiff's Termination ................................................................................. 25

POINT IV   SUMMARY JUDGMENT SHOULD BE GRANTED TO DEFENDANTS ON LOWE'S AIDING AND ABETTING CLAIMS ........................................... 25

CONCLUSION.......................................................................................................... 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alvarado v. Metro. Transp. Auth,*
No. 07 Civ. 3561, 2012 WL 1132143 (S.D.N.Y. Mar. 30, 2012) ...........................................22

*Auguste v. N.Y. Presbyterian Med. Ctr.,*
593 F.Supp.2d 659 (S.D.N.Y. 2009).......................................................................................13

*Barounis v. N.Y.C. Police Dep't,*
No. 10 Civ. 2631, 2012 WL 6194190 (S.D.N.Y. Dec. 12, 2012)............................................21

*Batista v. Waldorf Astoria,*
No. 13 Civ. 3226, 2015 WL 4402590 (S.D.N.Y. July 20, 2015) .....................................22, 23

*Beachum v. AWISCO N.Y.,*
785 F.Supp.2d 84 (S.D.N.Y. 2011) .........................................................................................15

*Beers v. NYNEX Material Enters. Co.,*
No. 88 Civ. 0305, 1992 WL 8299 (S.D.N.Y. Jan. 13, 1992)...................................................19

*Blanc v. Sagem Morpho, Inc.,*
No. 07 Civ. 3085, 2009 WL 1813236 (E.D.N.Y. June 25, 2009) ...........................................19

*Brooks v. Blank,*
No. 10 Civ. 8124, 2014 WL 1495774 (S.D.N.Y. Mar. 31, 2014) ....................................21, 22

*Burlington N. & Santa Fe Railway Co. v. White,*
548 U.S. 53 (2006)...................................................................................................................24

*Campbell v. Cellco P'ship,*
860 F.Supp.2d 284 (S.D.N.Y. 2012).......................................................................................20

*Chan v. Donahoe,*
63 F.Supp.3d 271 (E.D.N.Y. 2014) .........................................................................................16

*Chery v. City Univ. of N.Y.,*
No. 06 Civ. 2903, 2008 WL 858989 (E.D.N.Y. Mar. 31, 2008) ............................................17

*Collins v. N.Y.C. Transit Auth.,*
305 F.3d 113 (2d Cir. 2002).....................................................................................................11

*Colon v. Fashion Inst. of Tech.,*
983 F.Supp.2d 277 (S.D.N.Y. 2013)........................................................................................22

*Coser v. Moore*,
    739 F.2d 746 (2d Cir. 1984)..................................................................................18

*Deebs v. Alstom Transp., Inc.*,
    346 F. App'x 654 (2d Cir. 2009).............................................................................9

*Fincher v. Depository Trust & Clearing Corp.*,
    604 F.3d 712 (2d Cir. 2010).............................................................................9, 24

*Ghose v. Century 21, Inc.*,
    12 F. App'x 52 (2d Cir. 2001)...............................................................................16

*Grant v. Cont'l Cas. Co.*,
    13 Civ. 5675, 2015 WL 1499724 (S.D.N.Y. Mar. 30, 2015) ................................17

*Hahn v. Bank of Am., Inc.*,
    No. 12 Civ. 4151, 2014 WL 1285421 (S.D.N.Y. Mar. 31, 2014) .........................21

*Harris v. Forklift Sys., Inc.*,
    510 U.S. 17 (1993)................................................................................................19

*Henry v. Wyeth Pharm.*,
    616 F.3d 134 (2d Cir. 2010)..................................................................................15

*Hicks v. Baines*,
    593 F.3d 159 (2d Cir. 2010)..................................................................................24

*Holtz v. Rockefeller & Co.*,
    258 F.3d 62 (2d Cir. 2001)....................................................................................19

*Hyunmi Son v. Reina Bijoux, Inc.*,
    823 F.Supp.2d 238 (S.D.N.Y. 2011)................................................................10, 12

*Inguanzo v. Hous. & Servs., Inc.*,
    No. 12 Civ. 8212, 2014 WL 4678254 (S.D.N.Y. Sep. 19, 2014) .........................15

*Jaeger v. N. Babylon Union Free Sch. Dist.*,
    1991 F.Supp.3d 215 (E.D.N.Y. 2016) ..................................................................24

*Kalola v. Int'l Bus. Machs. Corp.*,
    No. 13 Civ 7339, 2017 WL 3394115 (S.D.N.Y. Feb. 28, 2007) ..........................16

*Kalola v. Int'l Bus. Machs. Corp.*,
    No. 13 Civ. 7339, 2017 WL 3381896 (S.D.N.Y. Aug. 3, 2007) ..........................16

*Lee v. Winthrop Univ. Hosp.*,
    No. 13 Civ. 5003, 2015 WL 7161955 (E.D.N.Y. Nov. 13, 2015)....................15, 18

*Lennert-Gonzalez v. Delta Airlines, Inc.*,
  No. 11 Civ. 1459, 2013 WL 754710 (S.D.N.Y. Feb. 28, 2013) .......................................23, 25

*Littman v. Firestone Tire & Rubber Co.*,
  709 F.Supp. 461 (S.D.N.Y. 1989) ......................................................................................18

*Lugo v. Le Pain Quotidien*,
  No. 13 Civ. 6450, 2015 WL 1808558 (S.D.N.Y. Apr. 13, 2015)..........................................14

*McDonnell Douglas Corp. v. Green*,
  411 U.S. 792 (1973)..............................................................................................................9

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
  715 F.3d 102 (2d Cir. 2013)....................................................................................10, 11, 24

*Nugent v. St. Luke's-Roosevelt Hosp. Ctr.*,
  303 F. App'x 943 (2d Cir. 2008) ..........................................................................................21

*Peters v. Mount Sinai Hosp.*,
  No. 08 Civ. 7250, 2010 WL 1372686 (S.D.N.Y. Mar. 30, 2010) ...................................14, 17

*Ponniah Das v. Our Lady of Mercy Med. Ctr.*,
  No. 00 Civ. 2574, 2002 WL 826877 (S.D.N.Y. Apr. 30, 2002)............................................16

*Ponniah Das v. Our Lady of Mercy Med. Ctr.*,
  56 F. App'x 12 (2d Cir. 2003)..............................................................................................16

*Ramsaran v. Booz & Co. (N.A.)*,
  No. 14 Civ. 708, 2015 WL 5008744 (S.D.N.Y. Aug. 24, 2015) ...........................................13

*Rasco v. BT Radianz*,
  No. 05 Civ. 7147, 2009 WL 690986 (S.D.N.Y. Mar. 17, 2009) ...........................................22

*Redd v. N.Y. Div. of Parole*,
  678 F.3d 166 (2d Cir. 2012)..................................................................................................20

*Revere v. Bloomingdale's, Inc.*,
  No. 03 Civ. 5043, 2006 WL 3314633 (E.D.N.Y. Nov. 14, 2006) .........................................12

*Richards v. N.Y.C. Dep't of Educ.*,
  No. 13 Civ. 16, 2015 WL 4164746 (S.D.N.Y. July 10, 2015) .........................................21, 22

*Risco v. McHugh*,
  868 F.Supp.2d 75 (S.D.N.Y. 2012) ......................................................................................24

*Rogers v. Bank of N.Y. Mellon*,
  No. 09 Civ. 8551, 2016 WL 4362204 (S.D.N.Y. Aug. 15, 2016) .........................................17

*Russo v. N.Y. Presbyterian Hosp.,*
    972 F.Supp.2d 429 (E.D.N.Y. 2013) ...................................................................................23

*Santiago v. City of N.Y.,*
    No. 05 Civ. 3668, 2009 WL 935720 (E.D.N.Y. Mar. 31, 2009) ...........................................21

*Schiano v. Quality Payroll Sys., Inc.,*
    445 F.3d 597 (2d Cir. 2006)....................................................................................................19

*Schupbach v. Shinseki,*
    905 F.Supp.2d 422 (E.D.N.Y. 2012) .....................................................................................18

*Sethi v. Narod,*
    12 F.Supp.3d 505 (E.D.N.Y. 2014) ................................................................................15, 16

*Simmons v. Akin Gump Strauss Hauer & Feld, LLP,*
    508 F. App'x 10 (2d Cir. 2013)............................................................................................9, 10

*Sinopoli v. Regula,*
    125 F.3d 844 (2d Cir. 1997)....................................................................................................23

*Slattery v. Swiss Reinsurance Am. Corp.,*
    248 F.3d 87 (2d Cir. 2001)......................................................................................................15

*Spahr v. Am. Dental Ctrs.,*
    No. 03 Civ. 4954, 2006 WL 681202 (E.D.N.Y. Mar. 14, 2006) ...........................................12

*Spell v. United Parcel Serv.,*
    No. 09 Civ. 4375, 2012 WL 4447385 (E.D.N.Y. Sept. 25, 2012)..........................................11

*Summa v. Hofstra Univ.,*
    708 F.3d 115 (2d Cir. 2013)..................................................................................................9, 23

*Thelwell v. City of N.Y.,*
    No. 13 Civ. 1260, 2015 WL 4545881 (S.D.N.Y. July 28, 2015) ...........................................22

*Thomsen v. Stantec, Inc.,*
    483 F. App'x 620 (2d Cir. 2012) ............................................................................................12

*Tomasino v. Mount Sinai Med. Ctr. & Hosp.,*
    No. 97 Civ. 5252, 2003 WL 1193726 (S.D.N.Y. Mar. 13, 2003) ..........................................11

*Trachtenberg v. Dep't of Educ. of N.Y.C.,*
    937 F.Supp.2d 460 (S.D.N.Y. 2013).......................................................................................21

*Vasconcellos v. Mount Sinai Med. Ctr.,*
    No. 05 Civ. 10479, 2011 WL 1097415 (S.D.N.Y. Feb. 16, 2011) .........................................12

*Vasconcellos v. Mount Sinai Med. Ctr.*,
  No. 05 Civ. 10479, 2011 WL 1046055 (S.D.N.Y Mar. 22, 2011) ..........................................12

*White v. Pacifica Found.*,
  973 F.Supp.2d 363 (S.D.N.Y. 2013)...........................................................................................9

**Rules**

Fed. R. Civ. P. 56(c) ........................................................................................................................9

## PRELIMINARY STATEMENT

On January 13, 2013, Plaintiff Martine Lowe ("Plaintiff" or "Lowe"), a former Business Associate A at The Mount Sinai Hospital ("Mount Sinai" or the "Hospital"), was terminated because she incorrectly registered a pregnant patient, which led to that patient having to repeat a blood test.  Lowe received a Final Warning with a 5-Day Suspension three months earlier after she committed another registration error by confusing the names of two patients and making improper changes to one of the patient's records, even though they had different birth dates and were of different races.  Plaintiff's union demanded arbitration and, on May 7, 2014, an impartial arbitrator reinstated Lowe but awarded her no back pay because "[s]he made two mistakes involving tasks fundamental to her position.  She did not follow the protocol for properly identifying patients who appeared before her."  The arbitrator went on to put Lowe "on unequivocal and final notice that performance errors of the kind she committed shall subject her to discharge in the future."  Less than a year after her reinstatement, an audit uncovered 15 Labor & Delivery Admissions Slips that Lowe was required, but failed, to ensure were completed properly.  Accordingly, on May 19, 2015, Lowe was terminated a second time.

Even though she admits making many of these serious errors, Plaintiff claims that she was discriminated against, subjected to a hostile work environment, and retaliated against, in violation of federal, state, and city law, because she is African-American and Haitian, and because she complained about discrimination.  Lowe's discrimination claims fail because: (i) Plaintiff was terminated for the legitimate, non-discriminatory reason that after being reinstated with a last chance warning by an impartial arbitrator, Lowe made more than a dozen registration errors and (ii) there is no evidence that she was discriminated against because she is African-American or Haitian.  Her hostile work environment claim lacks merit because the alleged

excessive scrutiny, criticism, and difficult tasks she was assigned, among other similarly trivial acts, are not severe and pervasive, and amount to no more than petty slights and inconveniences.

Lowe's retaliation claims fare no better. As a preliminary matter, there is no evidence that Plaintiff ever complained about discrimination. The record shows that she made only general complaints that she was being scrutinized and watched by her supervisor, Nick Lopiano ("Lopiano"). There is no evidence that this alleged scrutiny was motivated in any way by her alleged complaints. Indeed, Lowe attributes the alleged mistreatment that she received at the hands of Lopiano not to her race, national origin, or alleged complaints about discrimination, but to his alleged unhappiness with the fact that she was reinstated by the Arbitrator. Plaintiff's aiding and abetting claim should be dismissed because her discrimination and retaliation claims fail for the reasons discussed above.

## FACTS

**A.**     **Lowe's Employment At Mount Sinai**

Lowe began working at Mount Sinai as a Business Associate A ("BA") in Women and Children's Services (the "Department") on August 20, 2001. (Pl. Tr. 6; Lop. Tr. 16–17).[1] The Department provides care for pregnant women and newborn babies. (Lop. Decl. ¶2). It operates 24 hours a day, seven days a week. *Id.* In 2014 to 2015, there were approximately 22 BAs in the Department. *Id.* ¶3. As a BA, Lowe was responsible for, among other things, admitting patients, creating patient records by entering demographic information into the Hospital's system and insuring that the Labor & Delivery Admission Slips were completed. (Pl. Tr. 11, 13, Ex. 1).

---

[1] References to "Pl. Tr.," "Coh. Tr.," "Jon. Tr," "Lop. Tr.", and "Tor. Tr." are to the deposition transcripts of Lowe, Jeff Cohen, Clarissa Jones-Winter, Nick Lopiano, and Carol Torchen, respectively, which are exhibits H through L to the Declaration of Rory McEvoy. References to "Jon. Decl.," "LaVecc. Decl.," "Lop. Decl.", "Gross Decl.", "Sim. Decl.," and "Tor. Decl." are to the declarations of Clarissa Jones Winter, Salvatore LaVecchia, Nick Lopiano, Paul Gross, and Lanise Simmons, respectively.

During her employment at Mount Sinai, Lowe was a member of 1199SEIU United Healthcare Workers East ("1199" or the "Union").  (Pl. Tr. 45).  Lopiano became her supervisor in June 2010.  (Pl. Tr. 128–29; Lop. Tr. 10).  Carol Torchen ("Torchen") was the Director of Women and Children's Services from 2009 to August 2015 and was Lopiano's supervisor.  (Tor. Tr. 9; Lop. Tr. 15–16).

**B.**   **Mount Sinai's Anti-Discrimination And Anti-Retaliation Policies**

Mount Sinai's Employee Handbook sets forth its policies and procedures prohibiting all forms of employment discrimination, including race and national origin discrimination, and retaliation.  (LaVecc. Decl. ¶7, Ex. H).  The Handbook also outlines a grievance procedure whereby employees who "believe that [they] have been subjected to unfair, capricious, or discriminatory behavior…may file a formal grievance."  *Id.*

**C.**   **On September 30, 2012, Lowe Is Suspended And On January 16, 2013, She Is Terminated For Patient Registration Errors**

On September 30, 2012, Lowe incorrectly registered a new patient mistaking her for an existing patient.  (Pl. Tr. 158, Ex. 30).  The new patient's name was "Tiffani D," but Lowe registered her as an existing patient named "Tiffany D" and changed "Tiffany D's" demographics in her patient record to match that of the new patient.  (Pl. Tr. 165–66, Ex. 36, p. 2; Pl. Tr. 158–59, Ex. 30).  Lowe did this even though "Tiffany D's" race and date of birth were different from the patient standing in front of her.  (Pl. Tr. 165–66, Ex. 36, p. 8).  On October 22, 2012, Lowe received a Final Warning and a Five-Day Suspension because of this error.  (Pl. Tr. 158, Ex. 30).

Three months later, on January 1, 2013, Lowe made another registration error when she transposed the first and last names of an existing patient who came to the Hospital for pretesting for a C-section, which resulted in that patient undergoing the same blood test twice.  (Pl. Tr. 165–66, Ex. 36, pp. 2–3).  Although Lowe knew that this patient was not a new patient because

3

she was scheduled for a C-section the next day, Lowe created a new patient record for her. *Id.* at

10. As a result of Lowe's carelessness, when the patient returned the following day, there was no

record of the pretesting and she had to be tested again. *Id.* at 3, 10. The Hospital's Sanctions

Committee investigated the error and determined that Lowe should be terminated. (Tor. Tr. 24,

52–53; Lop. Tr. 25–26, 29). Accordingly, on January 16, 2013, Lowe was terminated. (Pl. Tr.

162–63, Ex. 33). Lopiano had no input in the decision to terminate her. (Lop. Tr. 29).

On November 2, 2012 and January 24, 2013, the Union filed grievances challenging the

suspension and the termination. (Pl. Tr. 159–60, 163, Exs. 31, 34). On February 4, 2013, a Step

III Grievance Hearing was held. After the hearing, the grievances were denied, and the

suspension and termination were upheld. (Pl. Tr. 160–61, 164, Exs., 32, 35).

**D.      On May 7, 2014, An Arbitrator Reinstates Lowe Without Back Pay And States
         That She Is On Notice That Future Mistakes Will Lead To Her Termination**

After the grievances were denied, the Union demanded arbitration. (Pl. Tr. 164). A full

evidentiary hearing was held before Arbitrator Howard Edelman on January 28 and April 9,

2014. (Pl. Tr. 165–66, Ex. 36, p. 3). The Union acknowledged that Lowe made the errors that

led to her suspension and termination, but argued that the penalties were excessive. *Id.* at 6.

On May 7, 2014, the Arbitrator issued his 14-page decision (the "Arbitration Award").

*Id.* He found that "[t]here is no doubt Lowe committed two errors in the space of three months."

*Id.* at 8. With regard to the first error, the Arbitrator found that Lowe "elevated [her mistake] to

an exceedingly careless one" when she changed the patient record. *Id.* at 8. The Arbitrator

found that although the suspension was proper, the final warning was not because while Lowe

had been "careless," the error was caught quickly and she had not been disciplined previously for

this type of mistake. *Id.* at 8–10. He found that the second error "adversely affected the patient,"

but because Lowe should have only had a suspension in her record, the proper discipline was a final warning with a longer suspension rather than termination. *Id.* at 10–11.

The Arbitrator reinstated Lowe but without back pay. *Id.* at 12. He determined that she was not entitled to back pay because "[s]he made two mistakes involving tasks fundamental to her position" and "did not follow the protocol for properly identifying patients who appeared before her." *Id.* The Arbitrator put Lowe "on unequivocal and final notice that performance errors of the kind she committed shall subject her to discharge in the future." *Id.* at 12–13.

**E.   In June 2014, Lowe Returns To Work
And Shadows Other Business Associates**

Lowe returned to work in June 2014. (Pl. Tr. 8). Although little had changed since Lowe's termination, Lopiano had her shadow other BAs to refresh her knowledge of the BA job duties. (Lop. Tr. 30–31; Pl. Tr. 62). Lowe admits that she was able to learn how to do the things that were new since her termination through shadowing. (Pl. Tr. 62–63). Employees of the Hospital who are reinstated to the same position generally do not receive formal retraining and are reoriented to their jobs by shadowing other employees. (Coh. Tr. 23).

**F.   In October 2014, Lowe Complains That Lopiano Is Scrutinizing Her**

In fall 2014, Tyrome Bell ("Bell"), Plaintiff's Union organizer, requested a meeting with Clarissa Jones-Winter ("Jones-Winter"), Director of Labor Relations, and Lowe. (Jon. Tr. 13, 21–23). Jones-Winter, who is African-American, met with Bell and Lowe in October 2014. (Jon. Tr. 44; Jon. Decl. ¶3). At the meeting, Lowe complained that Lopiano was watching her and scrutinizing her work. (Jon. Tr. 22–23). Neither Lowe nor Bell told Jones-Winter that Lowe believed that she was being discriminated against because she was African-American or Haitian. (Jon. Tr. 57–58, Ex. 4). Lowe asked that her concerns be kept confidential. (Jon. Tr. 44). Accordingly, Jones-Winter did not investigate her complaint at that time. *Id.*

After the October meeting, there were several additional meetings between December 2014 and March 2015 attended by Lowe, her union representative, Jones-Winter, Torchen and/or Lopiano. At each of these meeting, Lowe continued to complain that Lopiano was scrutinizing her work and having her co-workers watch her. At no time, however, did Lowe or the Union representative attribute Lopiano's conduct to Plaintiff's race or national origin. (Pl. Tr. 77–78, 87–88; Jon. Tr. 11, 29–30, 45–46, 57-58, 70–71, 74-75, Ex. 2).

**G.   On May 19, 2015, Lowe Is Terminated After An Audit Showed That
She Was Responsible For 15 Admissions Slips Being Completed Incorrectly**

When a patient is admitted to Women and Children's Services, the BA gives the patient an admission slip to fill out. (Pl. Tr. 17). Approximately 40 to 50 patients are admitted to Women and Children's Services each day. (Lop. Decl. ¶5e). The accurate completion of admissions slips is important because they are used to register patients and if a patient is not registered, no clinician can evaluate or treat her. (Lop. Decl. ¶5d). The BA fills out the section marked "FOR HOSPITAL USE ONLY" at the bottom of the slip. (Lop. Tr. 72). The patient is responsible for filling out the rest. (Lop. Tr. 71–72). The BA, however, is responsible for ensuring that the patient fills in all the required information. (Pl. Tr. 29–30; Lop. Tr. 73). The BA does not sign or write his or her name on the slip. (Lop. Decl. ¶5b).

In 2014, sections requiring Medicaid and newborn insurance information were added to the slip. (Lop. Tr. 81). On April 6, 2015, Lopiano sent an email to all BAs, including Lowe, reminding them to use the new form which includes newborn insurance. (Pl. Tr. 16, Ex. 4).

Lanise Simmons ("Simmons"), Administrative Manager of the Division of Newborn Medicine ("Newborn Medicine"), reviewed hard copies of the completed admissions slips each week. (Sim. Decl. ¶1–2). Simmons noticed that a number of the admission slips were missing the newborn insurance information. *Id.* ¶3. If an admissions slip is missing the newborn

insurance information for a baby in the Neonatal Intensive Care Unit, the staff in Newborn Medicine has to send a letter to the mother requesting that information. *Id.* ¶4. Newborn babies can be covered under the mother's insurance for the first 30 days after birth. *Id.* ¶5. If an admissions slip is missing the newborn insurance information for a well-baby and that information is not updated within 30 days of the baby's birth, the account will convert to self-pay and the mother is sent an invoice. *Id.* This prompts the mother to provide Mount Sinai with the baby's insurance information. *Id.* The failure of BAs to obtain the newborn baby's insurance information at admission creates these unnecessary and time-consuming administrative problems. *Id.*

On May 5, 2015, Simmons spoke with Lopiano and told him that, in a number of cases, the BAs were not capturing the newborn insurance information. (*Id.* ¶6; Lop. Decl. ¶5f). It was Simmons's expectation that Lopiano would take the necessary steps to identify the BAs who were not capturing this insurance information and correct the problem. (Sim. Decl. ¶7).

In order to address Simmons's concerns and to determine who was responsible for this important information not being obtained, Lopiano conducted an audit of the 520 to 650 admissions slips for the previous two weeks, from on or about April 22, 2015 to May 5, 2015. (Lop. Tr. 57–58; Lop. Decl. ¶¶5g, 5e). Lopiano reviewed every slip for this period looking for slips without a completed newborn insurance section. (Lop. Decl. ¶5h). For each slip that did not have this section completed, he went into Cerner, the system the Hospital uses to register and admit patients, and entered the patient's Medical Record Number to see which BA was responsible for the slip. (Lop. Decl. ¶5i). The audit showed that 20 slips were missing the newborn insurance information and four of the approximately 22 BAs in the Department at this time were responsible for these errors. (Lop. Tr. 58; Lop. Decl. ¶¶3, 6a).

Lowe was responsible for 15 of the 20 slips with missing newborn insurance information.[2] (Pl. Tr. 30–31, Ex. 6; Lop. Decl. ¶6a). Many of Lowe's slips were also missing other critical pieces of information. Nine were missing the admission date, seven were missing the policy/certificate ID number, four were missing the patient's social security number, two were missing the type of insurance, and one was missing the patient label that was supposed to be affixed to each admissions slip. (Pl. Tr. 24, Ex. 5).

Lopiano consulted with Salvatore LaVecchia ("LaVecchia"), Vice President of Labor Relations, regarding the results of the audit. (Lop. Tr. 87–89; LaVecc. Decl. ¶¶1, 3). LaVecchia, against whom Lowe makes no claim of discrimination or retaliation, reviewed the admissions slips that Lowe had failed to ensure were completed accurately, her prior record and the Arbitration Award. (LaVecc. Decl. ¶4). LaVecchia determined that Lowe had continued to make the same types of mistakes that led to her termination in 2013. *Id.* It is Hospital policy to terminate employees who have been reinstated with a last chance warning and commit an error similar to that one(s) that led to the employee's earlier termination. *Id.* ¶6. Accordingly, LaVecchia recommended that Lowe be terminated. (*Id.* ¶5; Lop. Tr. 87–89). On May 19, 2015, Lowe was terminated. (Pl. Tr. 30–31, Ex. 6).

The Union filed a grievance on Lowe's behalf. (Pl. Tr. 46, Ex. 7). A Step III Grievance Hearing was held on July 21, 2015 and her termination was upheld. (Pl. Tr. 47, Ex. 8). No doubt realizing that Lowe had violated the terms of her last chance reinstatement, the Union did not demand arbitration. (Pl. Tr. 51).

---

[2] Three other BAs were responsible for the five other admissions slips that were not completely properly. (Lop. Decl. ¶6c). Two were responsible for one slip each and the third was responsible for three slips. *Id.* Two of these BAs were white and one was Hispanic. (Lop. Tr. 78). The two BAs who were responsible for one slip each had no prior discipline so they received a verbal warning. (Lop. Decl. ¶6d) The BA who failed to ensure that three admissions slips were completed accurately had one prior verbal warning. *Id.* ¶6e. He attended a documented conference with Lopiano on May 5, 2015 and was told that his noncompliance was unacceptable. *Id.* ¶6e, Ex. D.

## APPLICABLE LEGAL STANDARD

Summary judgment is appropriate where the record, including the pleadings, depositions, interrogatories, admissions, and affidavits, demonstrates that there are no genuine issues of material fact in dispute and that one party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). Although credibility issues cannot be decided on summary judgment, self-serving testimony, by itself, is insufficient to avoid summary judgment. *See, e.g., Deebs v. Alstom Transp., Inc.,* 346 F. App'x 654, 656 (2d Cir. 2009) ("[T]he only 'evidence' cited in plaintiffs' brief is their own self-serving testimony and… the plaintiffs have 'made no attempt…to square their own speculative, and subjective, testimony with the hard evidence adduced during discovery.' Such evidence is insufficient to defeat summary judgment.").

Plaintiff's claims for race and national origin discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), and the New York State Human Rights Law (the "NYSHRL") are analyzed under the familiar *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973); *Summa v. Hofstra Univ.,* 708 F.3d 115, 125 (2d Cir. 2013) (Title VII and NYSHRL retaliation claims); *Simmons v. Akin Gump Strauss Hauer & Feld, LLP,* 508 F. App'x 10, 12 (2d Cir. 2013) (Title VII, Section 1981, and NYSHRL discrimination claims); *Fincher v. Depository Trust & Clearing Corp.,* 604 F.3d 712, 720 (2d Cir. 2010) (Section 1981 retaliation claims). If a plaintiff establishes a *prima facie* case, then the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse action. *McDonnell Douglas Corp.*, 411 U.S. at 802. If the employer establishes a legitimate, non-discriminatory reason, then the burden shifts back to a plaintiff to show that the employer's reason is pretext for discrimination or retaliation. *Id.* at 804.

With respect to the New York City Human Rights Law (the "NYCHRL"), the Second

Circuit has noted that it is "unclear whether, and to what extent, the *McDonnell Douglas* burden-

shifting analysis has been modified for NYCHRL claims." *Mihalik v. Credit Agricole*

*Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 n.8 (2d Cir. 2013) (internal quotations and citations

omitted). The Second Circuit further stated that summary judgment is appropriate under the

NYCHRL where "the record establishes as a matter of law that a reasonable jury could not find

the employer liable under any theory." *Id.* at 113. *See also White v. Pacifica Found.*, 973

F.Supp.2d 363, 379 (S.D.N.Y. 2013) ("While the *McDonnell Douglas* burden-shifting

framework still applies [to NYCHRL claims], at the final step the plaintiff has a lesser burden of

raising an issue as to whether the action was motivated at least in part by discrimination or,

stated otherwise, was more likely than not based in whole or in part on discrimination.") (internal

citations and quotations omitted).

## ARGUMENT

## POINT I

### SUMMARY JUDGMENT SHOULD BE GRANTED TO DEFENDANTS BECAUSE LOWE CANNOT ESTABLISH A CLAIM FOR RACE OR NATIONAL ORIGIN DISCRIMINATION

To establish a *prima facie* case of race or national origin discrimination under federal and

New York state law, a plaintiff must show that: (i) she is a member of a protected class; (ii) she

performed her job satisfactorily; (iii) she suffered an adverse employment action; and (iv) there

were circumstances giving rise to an inference of discrimination.[3] *Simmons,* 508 F. App'x at 12.

Under the NYCHRL, a plaintiff must show that she was treated less well than others because of

her membership in a protected class. *Mihalik*, 715 F.3d at 110.

---

[3] "Employment discrimination claims brought under section 1981 are generally analyzed under the same evidentiary framework that applies to Title VII." *Hyunmi Son v. Reina Bijoux, Inc.*, 823 F.Supp.2d 238, 242 (S.D.N.Y. 2011).

**A.**    **Lowe Was Terminated For Making 15 Registration Errors After She Had Been Reinstated By An Arbitrator With A Last Chance Warning That Any Future Errors Would Subject Her To Termination**

Pursuant to the Arbitration Award, Lowe's continued employment at Mount Sinai was contingent on her not making errors in registering patients which would violate the terms of her last chance reinstatement by the Arbitrator. However, less than a year after her reinstatement, an audit uncovered 15 admissions slips that Lowe failed to ensure were completed properly.

Lowe cannot challenge the findings of the Arbitrator or the fact that she was subject to termination if she made the same or similar mistakes again because it is well-established that where an independent and unbiased arbitrator makes findings based on substantial evidence after a fair hearing, those findings are entitled to great weight. *See, e.g., Collins v. N.Y.C. Transit Auth.,* 305 F.3d 113, 119 (2d Cir. 2002) (a decision by an independent tribunal following an evidentiary hearing which is based on substantial evidence is highly probative); *Spell v. United Parcel Serv.,* No. 09 Civ. 4375, 2012 WL 4447385, at *2 (E.D.N.Y. Sept. 25, 2012) ("[T]he decision of an unbiased, independent arbitrator is accorded considerable weight when it is based on substantial evidence and a fair hearing."); *Tomasino v. Mount Sinai Med. Ctr. & Hosp.,* No. 97 Civ. 5252, 2003 WL 1193726, at *12–13 (S.D.N.Y. Mar. 13, 2003) (the arbitrator's decision was entitled to great weight as to its factual findings because it was based on substantial evidence by a neutral arbitrator who issued a thorough 22-page decision). Here, Arbitrator Edelman conducted a two-day, full and fair evidentiary hearing at which the parties were represented by counsel. Arbitrator Edelman's 14-page award is based on substantial evidence and, therefore, should be accorded great weight.

Nor can there be any serious doubt that Plaintiff made the same types of mistakes that led to her first termination. Lowe admits that she was responsible for making sure that the patients

11

filled out the admissions slips completely. (Pl. Tr. 29–30). Moreover, Lowe admits that she had no excuse for failing to ensure that the patients filled in their admission dates or why she failed to put a patient label on one of the slips.[4] (Pl. Tr. 32, 45). Even in the absence of the Arbitration Award, these admissions negate any possible inference of discrimination. *See Vasconcellos v. Mount Sinai Med. Ctr.*, No. 05 Civ. 10479, 2011 WL 1097415, at *14 (S.D.N.Y. Feb. 16, 2011) ("To the extent that plaintiff admits her misconduct, these admissions negate any inference of discrimination."), *report and recommendation adopted*, 2011 WL 1046055 (S.D.N.Y. Mar. 22, 2011); *Spahr v. Am. Dental Ctrs.*, No. 03 Civ. 4954, 2006 WL 681202 at *5 (E.D.N.Y. March 14, 2006) (any inference of discrimination was eviscerated by Plaintiff's admitting to the acts of insubordination and dereliction of duty that led to her termination).

Lowe tried to explain away her failure to ensure that the sections regarding secondary insurance with Medicaid, newborn insurance, and the type of insurance for the mother were completed by the patient by claiming that other BAs told her not to complete these sections. (Pl. Tr. 32–35). It is well-established, however, that a "[p]laintiff may not establish pretext by rationalizing her errors or by blaming others." *Revere v. Bloomingdale's, Inc.*, No. 03 Civ. 5043, 2006 WL 3314633, at *8 (E.D.N.Y. Nov. 14, 2006). *See also Thomsen v. Stantec, Inc.*, 483 F. App'x 620, 623 (2d Cir. 2012) (the plaintiff's deficient performance was a legitimate, non-retaliatory reason for his termination even though the plaintiff "contends that such mistakes were inevitable or were the fault of others").

In any event, Lowe's attempt to blame her shortcomings on other BAs is nonsensical for several reasons. First, if Lowe thought she was not required to make sure that these sections of the admission slips were completed, this information would not have been captured on any of the

---

[4] The label contains all the critical information related to a patient, including, his or her full name and Medical Record Number. (Lop. Decl. ¶5c). Nurses and doctors use the information on the label to verify the patient. *Id.* Without a label, the nurses and/or doctor cannot perform this critical confirmation check. *Id.*

slips that she was responsible for, not just on some of them. Second, the audit showed that 18 out of 22 BAs always made sure that these sections were completed. Third, the notion that other BAs would make sure that these sections were completed while, at the same time, telling Lowe not to complete them is arrant nonsense.

Accordingly, Lowe's failure to accurately register patients after she had been reinstated pursuant to the Arbitration Award with a last chance warning by an Arbitrator Edelman is a legitimate, non-discriminatory reason for her termination that was not motivated, in any way, by her race or national origin. *See Ramsaran v. Booz & Co. (N.A.),* No. 14 Civ. 708, 2015 WL 5008744, at *7 (S.D.N.Y. Aug. 24, 2015) ("Poor performance is a legitimate, non-discriminatory reason for terminating an employee.") (collecting cases); *Auguste v. N.Y. Presbyterian Med. Ctr.,* 593 F.Supp.2d 659, 666 (S.D.N.Y. 2009) ("poor work performance has often been recognized as a legitimate, non-discriminatory reason for termination").

Lowe cannot show that Mount Sinai's reason for terminating her was a pretext for discrimination based on her unsupported and conclusory allegations that she was terminated because of her race and national origin. Even under the less stringent standards of the NYCHRL, Lowe has not (and cannot) make the required showing that she was treated less well because she is African-American and/or Haitian. Lowe has failed to produce a single piece of evidence besides her own conclusory allegations that her termination was related, in any way, to her race or national origin. Nor could she because: (i) the audit which uncovered the errors was conducted as a result of concerns raised by Simmons; (ii) when Lopiano selected the slips that were not completed properly, he did not know which BA was responsible for the slips with errors; and (iii) LaVecchia recommended that Plaintiff be terminated.

**B.**   **There Is No Evidence Of Race Or National Origin Discrimination**

Lowe's discrimination claims fail for the additional reason that the record contains no

evidence that she was discriminated against because of her race or national origin.  She makes no

allegations that anyone at Mount Sinai made any comments about her race.  Lowe believes that

Lopiano discriminated against her because "I'm Haitian and of course I'm black, I'm Haitian, I'm

black and I don't speak good English, so he can't really deal with me."  (Pl. Tr. 146).  Lowe's

argument is nothing more than the "*post hoc, ergo propter hoc* reasoning" of "I am a member of

a protected class; something bad happened to me at work; it must have happened because I am a

member of that protected class" which "has been rejected as insufficient again and again in

employment discrimination cases."  *Peters v. Mount Sinai Hosp.*, No. 08 Civ. 7250, 2010 WL

1372686, at *11 (S.D.N.Y. Mar. 30, 2010) (internal quotations and citations omitted).

**1.**   **The Only Alleged Comments About Lowe's**
**National Origin Are, At Most, Stray Remarks**

The only alleged comments in the record arguably made about Lowe's national origin are

that: (i) Lopiano told her that she could not speak English and that her English was hard to

understand; (ii) Lopiano made fun of the way she spoke; (iii) Torchen said that she could not

understand her and that she could not speak English well; and (iv) Lopiano asked her why she

did not go back to Haiti. (Pl. Tr. 76, 131, 195–96).  Lopiano denies making any of these

comments and Lopiano and Torchen stated that they had no trouble understanding her.  (Lop.

Decl. 4a–b; Tor. Tr. 90).  In any event, these alleged statements amount to no more than stray

remarks.  Still more, there is no allegation that LaVecchia, the individual who recommended

Lowe's discharge, ever made any remarks about Lowe's national origin (or her race).

It is well-established that "stray remarks, without more, and with no nexus to the adverse

employment action in this case, do not support an inference of discrimination."  *Lugo v. Le Pain*

14

*Quotidien,* No. 13 Civ. 6450, 2015 WL 1808558, at *5 (S.D.N.Y. Apr. 13, 2015) (internal

quotations and citations omitted). In determining if a remark is probative of discrimination,

courts look at: (i) who made the remark; (ii) when the remark was made in relation to the

employment decision at issue; (iii) the content of the remark; and (iv) whether the remark was

made in relation to the decision-making process. *Henry v. Wyeth Pharm.,* 616 F.3d 134, 149 (2d

Cir. 2010). "Where remarks are unrelated to a decision taken with respect to a plaintiff, they are

not probative of discriminatory intent." *Sethi v. Narod,* 12 F.Supp.3d 505, 543 (E.D.N.Y. 2014).

Even assuming that Lopiano and Torchen made the alleged comments, none were alleged

to have been made in relation to Lowe's termination or the decision-making process. Indeed,

Lowe failed to identify with any specificity when these comments were made except for her

vague testimony that some were made "often" and "at least once a month." (Pl. Tr. 76, 131–32).

*See Lee v. Winthrop Univ. Hosp.,* No. 13 Civ. 5003, 2015 WL 7161955, at *16 (E.D.N.Y. Nov.

13, 2015) (alleged comment not evidence of discrimination because the plaintiff offered only

vague testimony regarding when the comment was made and in what context). Thus, these

alleged comments, at best, constitute stray remarks that do not support an inference of

discrimination. *See Slattery v. Swiss Reinsurance Am. Corp.,* 248 F.3d 87, 92 n.2 (2d Cir. 2001)

(statements which were unrelated to the plaintiff's discharge need not be discussed); *Inguanzo v.*

*Hous. & Servs., Inc.,* No. 12 Civ. 8212, 2014 WL 4678254, at *16 (S.D.N.Y. Sep. 19, 2014)

("stray comments are not evidence of discrimination if they are not temporally linked to an

adverse employment action"); *Beachum v. AWISCO N.Y.,* 785 F.Supp.2d 84, 95–96 (S.D.N.Y.

2011) (allegedly racist remarks were insufficient because the plaintiff did not testify that the

comments were made in relation to the adverse action).

15

Likewise, comments that an employee should go back to her country are not evidence of discrimination where, as here, the comments are not causally connected to an adverse employment action. *See Kalola v. Int'l Bus. Machs. Corp.*, No. 13 Civ. 7339, 2017 WL 3394115, at *11 (S.D.N.Y. Feb. 28, 2007), *report and recommendation adopted,* 2017 WL 3381896 (S.D.N.Y. Aug. 3, 2017) ("go back to your country" is a stray remark because it had nothing to do with the plaintiff's job performance or the adverse actions); *Sethi,* 12 F.Supp.3d at 542–43 ("You f-king Indian, what do you think about yourself? I will make sure you are sent back to India" is a stray remark because it was unrelated to decisions taken with respect to the plaintiff).

The remaining alleged comments are about Lowe's accent and Lopiano and Torchen's inability to understand her. Even if true, comments regarding an employee's accent or difficulty understanding an employee do not provide an inference of discrimination. *See Ghose v. Century 21, Inc.,* 12 F. App'x 52, 54 (2d Cir. 2001) (plaintiff failed to show circumstances giving rise to an inference of discrimination based on evidence that his supervisors asked him to repeat himself because they could not understand him); *Chan v. Donahoe,* 63 F.Supp.3d 271, 298 (E.D.N.Y. 2014) (allegations that the plaintiff's supervisor joked about the way the plaintiff spoke English and mimicked his accent were insufficient to support an inference of discrimination); *Ponniah Das v. Our Lady of Mercy Med. Ctr.,* No. 00 Civ. 2574, 2002 WL 826877, at *10 (S.D.N.Y. Apr. 30, 2002) ("That Ms. Cortez said that she could not understand Mr. Das's accent does not support a claim of discrimination."), *aff'd,* 56 F. App'x 12 (2d Cir. 2003).

## 2.      Lowe's Subjective Interpretation Of Lopiano's Facial Expressions And Torchen's Tone Fails To Provide Evidence Of Discrimination

Lowe also alleges that: (i) Lopiano made faces when she spoke because she had an accent and (ii) Torchen once asked her where she is from and from her "tone," Lowe "know [sic] where

16

that was going to lead." (Pl. Tr. 133, 196).   It is well established, however, that a plaintiff's subjective and conclusory interpretations of a supervisor's facial expression or tone cannot provide evidence of discrimination. *See Grant v. Cont'l Cas. Co.*, 13 Civ. 5675, 2015 WL 1499724, at *9 (S.D.N.Y. Mar. 30, 2015) ("Muirhead's habit of sighing when Plaintiff spoke likewise fails to demonstrate discriminatory animus."); *Peters,* 2010 WL 1372686, at *10 (the plaintiff's subjective interpretation of her supervisor's demeanor and facial expressions did not provide evidence of pretext); *Chery v. City Univ. of N.Y.,* No. 06 Civ. 2903, 2008 WL 858989, at *4 (E.D.N.Y. Mar. 31, 2008) (the plaintiff's interpretation of the chairperson of the department's facial expression as one of "mockery and insult" failed to demonstrate discriminatory intent).

### 3. There Is No Evidence That Lopiano Treated African-American Business Associate A's Worse Than White Business Associate A's Or That He Replaced African-American Business Associate A's With White Business Associate A's

The gravamen of Lowe's race discrimination claim is that Lopiano discriminated against African-American employees, terminated them, and replaced them with white employees. (Compl. ¶¶ 16, 41, 69).   At her deposition, Lowe speculated that five African-American employees were treated unfairly by Lopiano. (Pl. Tr. 169–71, 174–91).   The speculative nature of Plaintiff's belief that Lopiano mistreated African-American employees is best exemplified by her unsubstantiated belief that an African-American employee was terminated, and although Lowe did not know why she was terminated, it must have been unfair because Lowe did not remember her making any mistakes. (Pl. Tr. 169–71).

Plaintiff's idle speculation regarding the treatment of African-American employees in Women and Children's Services is insufficient to create a genuine issue of material fact on any of her claims. *See Rogers v. Bank of N.Y. Mellon,* No. 09 Civ. 8551, 2016 WL 4362204, at *20 (S.D.N.Y. Aug. 15, 2016) (the plaintiff's speculation that employees outside her protected class

were not disciplined for the conduct she was disciplined for did not create an issue of fact given that she did not have personal knowledge of other employees' disciplinary records and could not identify a similarly situated employee who violated the employer's policy in a manner similar to how she violated it); *Lee,* 2015 WL 7161955, at *13 ("[I]t is well-established that mere conclusory assertions that the employees outside of the plaintiff's class were treated more favorably will not suffice to create a triable issue of fact.").

Lowe's allegation that Lopiano terminated African-American employees so that he could replace them with white employees is false. The evidence shows that 11 BAs were hired after Lopiano began working at Mount Sinai in June 2010. (Gross Decl. ¶3, Ex. E). Six self-identified as black, two as Hispanic, two with two or more races, and one as white. *Id.* Even if this uncontradicted fact did not negate Lowe's claim that Lopiano replaced African-American employees with white ones, the number of African-Americans hired by Lopiano is insufficient to create an inference of discrimination. *See Lee,* 2015 WL 7161955, at *12 ("[E]ven construing the Plaintiff's allegation that the PT Department hired few African Americans as true, that fact, by itself, would not be sufficient to establish a *prima facie* case of race discrimination."). This is particularly true because Lowe fails to present any evidence regarding the pool of applicants from which Lopiano hired. *See Coser v. Moore,* 739 F.2d 746, 752 (2d Cir. 1984) (statistical disparities regarding race are not probative in absence of evidence as to the relevant pool of qualified applicants); *Schupbach v. Shinseki,* 905 F.Supp.2d 422, 433 (E.D.N.Y. 2012) (statistics regarding the race of employees who were hired without any information regarding the pool of applicants cannot provide a basis for an inference of discrimination).[5]

---

[5] In fact, Plaintiff took no discovery on the applicant pool. *See Littman v. Firestone Tire & Rubber Co.,* 709 F.Supp. 461, 466 (S.D.N.Y. 1989) ("Plaintiff has chosen not to conduct any discovery of defendant on this…Without more, I am unwilling to indulge outlandish assumptions…").

4.   **Lopiano Was Entitled To Evaluate Lowe's**
     **Performance According To His Own Expectations**

Lowe also alleges that prior to Lopiano becoming her supervisor, she had never been

disciplined and was considered "one of the best associates." Compl. ¶22. However, "a new

manager is allowed to appraise an employee's work according to his or her own expectations,

even if those expectations are contrary to a prior manager's expectations." *Beers v. NYNEX*

*Material Enters. Co.,* No. 88 Civ. 0305, 1992 WL 8299, at *11 (S.D.N.Y. Jan. 13, 1992).

Moreover, there is evidence that Lowe's manager prior to Lopiano did not hold her staff

accountable for their work performance and Torchen hired Lopiano to hold the staff more

accountable.  (Tor. Tr. 87–88).  *See Blanc v. Sagem Morpho, Inc.,* No. 07 Civ. 3085, 2009 WL

1813236, at *17 (E.D.N.Y. June 25, 2009) (the fact that the plaintiff had previously received

satisfactory evaluations from previous supervisors did not raise an inference in pretext especially

where the plaintiff's current supervisor was more demanding than the previous supervisors).

## POINT II

### SUMMARY JUDGMENT SHOULD BE GRANTED TO DEFENDANTS BECAUSE LOWE CANNOT ESTABLISH A CLAIM FOR HOSTILE WORK ENVIRONMENT

To establish a claim for a hostile work environment under federal and New York state

law, a plaintiff must show that her "workplace [was] permeated with discriminatory intimidation,

ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of the

victim's employment and create an abusive working environment."[6] *Schiano,* 445 F.3d at 604

(quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993)).  As a general rule, incidents must

be "more than episodic; they must be sufficiently continuous and concerted in order to be

deemed pervasive." *Holtz v. Rockefeller & Co.,* 258 F.3d 62, 75 (2d Cir. 2001) (internal citations

---

[6] Hostile work environment claims under the NYSHRL are governed by the same standards as claims under Title VII. *Schiano v. Quality Payroll Sys., Inc.,* 445 F.3d 597, 610 (2d Cir. 2006).

omitted).  Under the NYCHRL, although the treatment does not have to be severe and pervasive, petty slights and trivial inconveniences are not actionable.  *Campbell v. Cellco P'ship,* 860 F.Supp.2d 284, 298 (S.D.N.Y. 2012).

Under federal, state, and city law, the plaintiff must show that the hostile work environment occurred because of an employee's protected characteristic.  *See, e.g., Redd v. N.Y. Div. of Parole,* 678 F.3d 166, 175 (2d Cir. 2012) (holding that under Title VII, a plaintiff must show that the hostile treatment was because of his or her gender); *Campbell,* 860 F. Supp. 2d at 298–99 (holding that under the NYCHRL, in order to survive summary judgment, a plaintiff must show that the alleged treatment was because of his race).

## A.   The Alleged Treatment Was Not Severe And Pervasive, And Amounted To No More Than Petty Slights And Trivial Inconveniences

Lowe alleges that Lopiano created a hostile environment by: (i) telling her co-workers to watch her and report back to him if she did anything wrong in June 2014; (ii) not providing her with new training in June 2014; (iii) treating her as a floater until a meeting with the Union, which resolved the issue; (iv) denying her a paid break on one occasion, (v) having her cover two departments by herself on an unspecified number of occasions; (vi) scolding her in front of her co-workers via email once and verbally "a couple of times"; (v) telling her she was "next" to be terminated once; (vi) making her cover a floor she was not trained for on one occasion on December 11, 2014; (vii) asking her for a statement regarding one of her assignments on December 12, 2014; (viii) asking her why she elected to take her meal break after 10:00 p.m. on January 28, 2015; and (ix) not treating her to pizza or free movie tickets.  (Pl. Tr. 56–57, 60–61, 63–68, 70–75, 78, 80–86, 203).

Lowe admits that after she was reinstated, Lopiano had her shadow co-workers and through shadowing, she was able to learn everything that changed since her termination.  (Pl. Tr.

62–63). In fact, all employees who are reinstated to the same position do not receive retraining. (Coh. Tr. 23). The evidence also shows that Lopiano did include Lowe when he gave the staff free movie tickets or meal vouchers on at least two occasions. (Lop. Decl. ¶4e, Exs. B, C).

The remainder of the alleged hostile acts are insufficient, as a matter of law, to create a hostile work environment under federal or state law because they were neither frequent (indeed, many happened on only one occasion over many months) nor severe. *See Nugent v. St. Luke's-Roosevelt Hosp. Ctr.,* 303 F. App'x 943, 945 (2d Cir. 2008) (the derogatory language, dismissive comments, and intense scrutiny allegedly directed at the plaintiff were insufficient to establish a hostile environment); *Richards v. N.Y.C. Dep't of Educ.,* No. 13 Civ. 16, 2015 WL 4164746, at *11 (S.D.N.Y. July 10, 2015) (being assigned impossible tasks, among other things, was insufficient to establish a hostile environment); *Hahn v. Bank of Am., Inc.,* No. 12 Civ. 4151, 2014 WL 1285421, *24 (S.D.N.Y. Mar. 31, 2014) (being yelled at and embarrassed in front of co-workers fails does not establish a hostile environment); *Brooks v. Blank,* No. 10 Civ. 8124, 2014 WL 1495774, at*15 (S.D.N.Y. Mar. 31, 2014) (being subjected to a comment regarding "you do that again you [are] going to get fired," monitored closely, and unfairly criticized are insufficient to create a hostile environment); *Trachtenberg v. Dep't of Educ. of N.Y.C.,* 937 F.Supp.2d 460, 472–73 (S.D.N.Y. 2013) (excessive scrutiny and being refused training opportunities fell "well short" of creating a hostile environment); *Barounis v. N.Y.C. Police Dep't.* No. 10 Civ. 2631, 2012 WL 6194190, at *13 (S.D.N.Y. Dec. 12, 2012) (the fact that the defendants yelled at the plaintiff in front of his peers and called him a "criminal" and a "thief" was not severe enough to create a hostile environment); *Santiago v. City of N.Y.,* No. 05 Civ. 3668, 2009 WL 935720, at *12, 14 (E.D.N.Y. Mar. 31, 2009) (the plaintiff's allegations, including that she was denied meal relief, were insufficient to create a hostile environment).

21

This alleged treatment amounts to no more than petty slights and inconveniences and, as a result, Lowe's hostile work environment claim under the NYCHRL fails. *See Richards*, 2015 WL 4164746, at *11 (being assigned impossible tasks, among other things, was insufficient to establish a hostile environment under the NYCHRL); *Thelwell v. City of N.Y.*, No. 13 Civ. 1260, 2015 WL 4545881, at *12 (S.D.N.Y. July 28, 2015) (being criticized "remains far from even a borderline hostile work environment violation" under the NYCHRL); *Colon v. Fashion Inst. of Tech.*, 983 F.Supp.2d 277, 292 (S.D.N.Y. 2013) (being micromanaged, subjected to intense scrutiny, and being required to call her supervisor when she arrived at work each day were insufficient to sustain a hostile environment claim under the NYCHRL); *Alvarado v. Metro. Transp. Auth.*, No. 07 Civ. 3561, 2012 WL 1132143, at *12 (S.D.N.Y. Mar. 30, 2012) (excessive scrutiny was insufficient to sustain a hostile work environment claim under the NYCHRL).[7]

## B.  Lowe Cannot Show That Defendants Created A Hostile Work Environment For Her Because Of Her Race Or National Origin

In any event, none of these incidents are linked in any way to Plaintiff's race or national origin.  Nor has Lowe offered any evidence that Defendants created a hostile work environment for her because she is African-American or Haitian.  "Where a plaintiff relies on facially-neutral events, there must be a reasonable link to Plaintiff's race." *Brooks v. Blank*, 2014 WL 1495774, at *15.  Plaintiff merely speculates that the alleged treatment must be because of her race and/or national origin.  This is clearly insufficient. *See Batista v. Waldorf Astoria*, No. 13 Civ. 3226, 2015 WL 4402590, at *8 (S.D.N.Y. July 20, 2015) (the plaintiff could not save his hostile work environment claim based on his unsubstantiated speculation that he was treated poorly on other

---

[7] To the extent that Lowe is asserting a claim for a retaliatory hostile environment the standard for that claim is the same as the one that governs discriminatory hostile environment claims. *Rasco v. BT Radianz*, No. 05 Civ. 7147, 2009 WL 690986, at*15 (S.D.N.Y. Mar. 17, 2009).  The alleged retaliatory acts relied on by Lowe are similar to those that form the basis of her discriminatory hostile environment claim.  (Pl. Tr. 88–93, 137–41, 204–06).  Accordingly, these alleged acts cannot create a hostile environment for the same reasons as the ones relied on here.

occasions based on his race and national origin).   Moreover, it appears that Lowe believes that

Lopiano mistreated her because he was unhappy that the arbitrator had reinstated her, which has

nothing to do with her membership in any protected class.   (Pl. Tr. 95).

Lowe's conclusory and general allegations that Lopiano "often" asked her "why don't you

go back to Haiti" and "at least once a month" made comments regarding her English cannot save

her hostile work environment claim based on her national origin.   *See Sinopoli v. Regula,* 125

F.3d 844, 844 (2d Cir. 1997) ("the statement that he was 'often' ridiculed is conclusory"); *Batista,*

2015 WL 4402590, at *8 ("Adding a general allegation-that Sangari 'continuously' called

Plaintiff '[F]ucking Dominican' and '[F]ucking Latino'-does not transform Plaintiff's case into

one of pervasive discriminatory conduct.").

Accordingly, Plaintiff's hostile work environment claims fail as a matter of law.   *See,*

*e.g., Russo v. N.Y. Presbyterian Hosp.,* 972 F.Supp.2d 429, 451–54 (E.D.N.Y. 2013) (the

plaintiff's Title VII and NYCHRL hostile work environment claims failed because she was

unable to show that the alleged treatment was because of her gender); *Lennert-Gonzalez v. Delta*

*Airlines, Inc.,* No. 11 Civ. 1459, 2013 WL 754710, at *8 (S.D.N.Y. Feb. 28, 2013) (the plaintiff's

Title VII and NYCHRL hostile work environment claims failed because she "has not

demonstrated that she was subject to hostility based on her national origin").

## POINT III

### SUMMARY JUDGMENT SHOULD BE GRANTED TO DEFENDANTS BECAUSE LOWE CANNOT ESTABLISH A CLAIM FOR RETALIATION

To establish a *prima facie* case of retaliation under federal and New York state law, a

plaintiff must show that: (i) she was engaged in a protected activity; (ii) her employer was aware

of this activity; (iii) the employer took adverse action against the plaintiff; and (iv) a causal

connection exists between the alleged adverse action and the protected activity. *Summa,* 708 F.3d

at 125 (Title VII and NYSHRL); *Fincher,* 604 F.3d at 720 (Section 1981).  An adverse action

must be materially adverse, which in the retaliation context, means that it would dissuade a

reasonable employee from making a charge of discrimination.  *Burlington N. & Santa Fe*

*Railway Co. v. White,* 548 U.S. 53, 67–68 (2006); *Hicks v. Baines,* 593 F.3d 159, 165 (2d Cir.

2010).  "Petty slights or minor annoyances" do not constitute retaliation.  *Hicks,* 593 F.3d at 165.

Similarly, under the NYCHRL, a plaintiff must show that she "took an action opposing her

employer's discrimination" and "as a result, the employer engaged in conduct that was

reasonably likely to deter a person from engaging in such action."  *Mihalik*, 715 F.3d at 112.

## A.    There Is No Evidence That Plaintiff Ever Complained About Discrimination

The protected activities alleged by Plaintiff are: (i) a meeting on October 2, 2014 with

Jones-Winter and the Union; (ii) a meeting in December 2014 with Bell and someone from

Labor Relations; and (iii) a meeting on February 6, 2015 with the Union, Lopiano and Torchen.

(Pl. Tr. 75–78, 87).  The only time that Lowe testified that she complained about discrimination

was during the meeting on October 2, 2014.  (Pl. Tr. 75–77).  She does not remember what she

complained about during the December 2014 meeting.  (Pl. Tr. 78).  Lowe testified that at the

February 6, 2015 meeting she complained that Lopiano scrutinized and watched her, but did not

testify that she complained about discrimination.  (Pl. Tr. 87–88).  It is well-settled that "absent a

claim of unlawful discrimination, general complaints about employment concerns do not

constitute protected activity."  *Jaeger v. N. Babylon Union Free Sch. Dist.,* 1991 F.Supp.3d 215,

231 (E.D.N.Y. 2016).  *See also Risco v. McHugh,* 868 F.Supp.2d 75, 110 (S.D.N.Y. 2012)

("Generalized complaints about a supervisor's treatment are insufficient.").

The evidence shows that Lowe never complained about discrimination.  Jones-Winter

(against whom Lowe makes no claim of discrimination or retaliation) testified, and her

contemporaneous notes of her meetings with Lowe and Bell confirm, that Lowe and Bell never complained about discrimination during any meeting with her. (Jon. Tr. 57–60, Ex. 4; Jon. Decl. ¶5, Ex. A). Jones-Winter's testimony and notes also show that Lowe only complained that Lopiano was scrutinizing her and having co-workers watch her. (Jon. Tr. 23, 33, 57–58, Ex. 4).

More importantly, Lowe never made any written complaints of discrimination to Labor Relations (or anyone else). She failed to produce a single document giving the slightest hint that she ever complained about discrimination while she was employed at the Hospital. Rather, the complaints that Plaintiff emailed to Bell were general complaints about Lopiano's treatment and do not mention her race or national origin. (Pl. Tr. 120, 123, 125, Exs. 20–22).

**B.     There Is No Causal Connection Between Plaintiff's Alleged Complaints And Plaintiff's Termination**

Assuming arguendo that Plaintiff engaged in protected activity, Plaintiff's retaliation claim still fails because the record evidence conclusively establishes that there is no causal connection between her termination and her alleged complaints. As discussed above, Mount Sinai terminated Lowe solely because an audit revealed that she made 15 registration errors after she had been reinstated pursuant to an Arbitration Award with a last chance warning by an impartial arbitrator. Her termination was recommended by Labor Relations. There is no evidence that she was terminated for any other reason, including her alleged complaints.

## POINT IV

## SUMMARY JUDGMENT SHOULD BE GRANTED TO DEFENDANTS ON LOWE'S AIDING AND ABETTING CLAIM

Lowe's aiding and abetting claim fails because her discrimination and retaliation claims fail for the reasons discussed above. *See, e.g., Lennert-Gonzalez,* 2013 WL 754710, at *10 ("Because, as explained above, Lennert-Gonzalez's discrimination claims fail, so too does her aiding and abetting claim.").

## CONCLUSION

For all the foregoing reasons, Defendants' motion for summary judgment should be granted and the Complaint should be dismissed in its entirety with prejudice.

Date:   New York, New York
        December 8, 2017

AKERMAN LLP

Rory J. McEvoy
Brittany A. Buccellato